**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT COLUMBUS**

| | | |
|---|---|---|
| **RONALD E. SCHERER, SR.,** | * | **CASE NO. 2:12-cv-01101** |
| **Plaintiff,** | | **Judge Algenon L. Marbley** |
| **v.** | * | |
| **JAMES M. WILES, ESQ., et al.** | | **DEFENDANTS' MOTION FOR** |
| **Defendants** | * | **SUMMARY JUDGMENT ON** |
| | | **STATUTE OF LIMITATIONS** |
| | | **DEFENSE** |

Now come the Defendants, James M. Wiles, Esq. and Wiles, Boyle, Burkholder & Bringardner Co., L.P.A., by and through counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby move the Court for summary judgment on Plaintiff, Ronald E. Scherer, Sr.'s claims in their entirety.  Construing the facts in a light most favorable to Plaintiff, there is no genuine issue of material fact.  Simply, the attorney-client relationship terminated between the parties more than one year before Plaintiff's November 30, 2012 Complaint.  Accordingly, Plaintiff's claims are time-barred by R.C. 2305.11(A) thereby entitling James M. Wiles, Esq. and Wiles, Boyle, Burkholder & Bringardner Co., L.P.A. to judgment as a matter of law.  This Motion is supported by the attached Memorandum.

Respectfully submitted,

*/s/ Neil F. Freund*
Neil F. Freund  (0012183)
Adam C. Armstrong  (0079178)
FREUND, FREEZE & ARNOLD
Fifth Third Center
1 South Main Street, Suite 1800
Dayton, OH  45402-2017
Phone: (937) 222-2424
Fax: (937) 222-5369
callison@ffalaw.com
aarmstrong@ffalaw.com
*Counsel for Defendants*
*James M. Wiles, Esq. and*
*Wiles, Boyle, Burkholder &*
*Bringardner Co., L.P.A.*

<u>**MEMORANDUM**</u>

**I.    <u>INTRODUCTION</u>**

Plaintiff Ronald E. Scherer, Sr. ("Plaintiff") seeks to hold James M. Wiles, Esq. and Wiles, Boyle, Burkholder & Bringardner Co., L.P.A. (collectively the "Wiles Firm") liable for his years of egregious, contemptuous and improper conduct in the underlying Trust Litigation which resulted in a $6,202,623 judgment against him.  The history of the Trust Litigation is outlined in the Sixth Circuit's opinion affirming the dismissal of an action filed by Plaintiff in this Court, and in fact, *sua sponte* sanctioning his prior counsel for a frivolous appeal.[1]

The $6,202,623 judgment was entered against Plaintiff in May 2008 and the Wiles Firm appealed the judgment on Plaintiff's behalf all the way to the Ohio Supreme Court.  When the Supreme Court declined jurisdiction on April 14, 2010, the judgment became final.  Jim Wiles affirmatively terminated the attorney-client relationship with Plaintiff on May 21, 2010.  On July 19, 2010, Plaintiff retained new counsel to represent him.  The Wiles Firm never again filed or prepared pleadings or appeared in court on Plaintiff's behalf in the Trust Litigation.  Counsel and the court never again served the Wiles Firm with pleadings, notices, etc.  As Jim Wiles aptly stated, the Wiles Firm was "out."

**II.   <u>STATEMENT OF FACTS</u>**

    **A.    *Bank One Trust Co., N.A. v. Ronald E. Scherer, Sr., et al.*, Case No. 430379 C, Franklin County Probate Court (the "Trust Litigation").**

On September 14, 2004, Bank One Trust Company filed a verified complaint "with a declaratory judgment action to compel [Plaintiff (and others)] to provide the necessary information to prepare a final accounting, wind up Bank One's administration of the trust, and

---

[1] *See fn. 14, infra*, *Scherer v. JP Morgan Chase & Co.*, 508 Fed. Appx. 429, 433 (6th Cir. 2012).  Attached as **Exhibit O**.  The history of the Trust Litigation is also outlined in six (6) opinions from Ohio's Tenth District Court of Appeals.  *See also fn. 2, 5 and 17, infra.*

put in place a successor trustee.  *Bank One Trust Co., N.A. v. Scherer*, 10th Dist. Nos. 08AP-494, 08AP-517, 08AP-526, 2009-Ohio-6192, ¶ 15 ("*Scherer V*").[2]  Bank One "eventually added claims against [Plaintiff] personally, reflecting his alleged conversion of trust assets to his own profit."  *Id*.  Plaintiff and the other "beneficiaries counterclaimed, asserting the bank breached various fiduciary duties in administering the trust."  *Id*.  Plaintiff was originally represented by three different attorneys.  *Deposition of Ronald E. Scherer, Sr.*, p. 11:19-12:5 (contemporaneously filed with the Court).  On December 22, 2005, Jim Wiles, Dale Cook and the Wiles Firm entered their appearance on behalf of Plaintiff.[3]  *Deposition of James M. Wiles*, p. 56:20-57:5 (contemporaneously filed with the Court).[4]

Between 2006 and 2008, aspects of the Trust Litigation were appealed to the Tenth District Court of Appeals four (4) times.[5]  Before the August 2007 trial date, the probate court "entered a series of orders resolving the many ongoing discovery disputes and imposing various sanctions on" Plaintiff (and others).  *Scherer V*, at ¶ 18.   Relevant to the issue before this Court:

- The probate court's February 1, 2007 judgment entry dismissed Plaintiff's (and others) counterclaims and claims with prejudice pursuant to Civ. R. 37(B)(2)(c) for various discovery violations;

- The probate court's April 17, 2007 entry precluded Plaintiff (and others) from presenting the testimony of two accountants due to Plaintiff's repeated refusal to cooperate and his continued interference with their availability for depositions;

- The probate court's May 25, 2007 entry denied Plaintiff's (and others) motion for an extension of time to file objections to the trust accounting; and

---

[2] Attached as **Exhibit A**.
[3] See *December 22, 2005 Notice of Appearance*, attached as **Exhibit B**.
[4] Per agreement of counsel, pages 22-23 and 47-48 were designated under seal and redacted.
[5] *Bank One Trust Co., N.A. v. Scherer*, 10th Dist., No. 06AP-70, 2006-Ohio-5097 ("*Scherer I*"), attached as **Exhibit C**; *Bank One Trust Co., N.A. v. Scherer*, 176 Ohio App.3d 694, 893 N.E.2d 542, 2008-Ohio-2952 ("*Scherer II*"), attached as **Exhibit D**; *Bank One Trust Co., N.A. v. Scherer*, 10th Dist. No. 08AP-288, 2008-Ohio-6910 ("*Scherer III*"), attached as **Exhibit E**; and *Bank One Trust Co., N.A. v. Scherer*, No. 09AP-117, 2009-Ohio-3241 ("*Scherer IV*"), attached as **Exhibit F**.

- The probate court's June 8, 2007 order reaffirmed the order dismissing with prejudice all of Plaintiff's (and others) counterclaims and gave all other defendants, other than Plaintiff, the opportunity to provide individualized objections to the final trust accounting.

Trial began in August 2007.  *Id*., at ¶ 19.  On May 14, 2008, the probate court entered

final judgment as follows:

- Entered judgment against Plaintiff in the amount of $6,202,623 due to Plaintiff's conversion of trust assets over the course of several years;

- Overruled all objections Plaintiff (and others) filed to Bank One's final accounting;

- Approved Bank One's resignation as trustee for the trusts and barred Plaintiff (and others) from making further objections to Bank One's final accountings or claims against Bank One arising from or relating to Bank One's administration of the trusts over the years; and

- Ordered Plaintiff removed as a trust advisor and prohibited him from reappointment.

*Scherer V*, at ¶ 20.

The Wiles Firm timely appealed the probate court's May 14, 2008 final judgment.

*Scherer Depo*, p. 34:11-15.  On November 24, 2009, the Tenth District Court of Appeals ruled,

in pertinent part, as follows:

- Affirmed the $6,202,623 judgment against Plaintiff (*Scherer V*, ¶¶ 48-53);

- Affirmed the dismissal of Plaintiff's counterclaims as a discovery sanction due to his egregious and continuing actions to cripple discovery proceedings (*Scherer V*, ¶¶ 31-47);

- Reversed the dismissal of the counterclaims of trust beneficiaries other than Plaintiff (*Scherer V*, ¶¶ 31-47); and

- Remanded the matter back to the probate court for a new hearing on Bank One's final accounting and counterclaims of beneficiaries other than those of Plaintiff (*Scherer V*, ¶ 61).

FREUND, FREEZE & ARNOLD
A Legal Professional Association

The Wiles Firm filed a notice of appeal and memorandum in support of jurisdiction with the Ohio Supreme Court on January 8, 2010.[6]  On April 14, 2010, the Supreme Court declined jurisdiction.[7]  The same day, Plaintiff advised Jim Wiles that the "Supreme Court [s]ent us packing. . . kicked our case!"[8]  Plaintiff and the Wiles Firm discussed whether it was worthwhile to file a motion for reconsideration but it was ultimately determined not to be.[9]

### B.    Wiles Firm is Out.

On May 20, 2010, Plaintiff emailed Jim Wiles regarding questions pertaining to Park National Bank (successor trustee), final accounting issues and whether Jim Wiles had a litigation plan.[10]  Jim Wiles affirmatively responded on May 21, 2010 that "we [the Wiles Firm] are out." *Id*., *Scherer Depo*, p. 48:3-13.   This was confirmed to Plaintiff on a number of separate occasions.  *Exhibit K*, *Wiles Depo*, p. 49:13-17, 78:6-20.  Plaintiff inquired on May 22, 2010 whether the Wiles Firm "filed a withdrawal from the case"  because new counsel Park National Bank was interviewing wanted to know.  *Exhibit K*, *Scherer Depo*, p. 56:3-9.  Jim Wiles responded, "[n]o we did not withdraw[, w]e represented only you.  If you are out, so are we[.]" *Exhibit K*.  The Wiles Firm never filed a motion to withdraw.  *Deposition of Michael L. Close*, p. 34:1-3.[11]   Other than emailing a joke to Jim Wiles on June 2, 2010,[12] Plaintiff did not communicate with Jim Wiles from May 22, 2010 to November 1, 2010.  *Scherer Depo*, p. 80:12-18.

---

[6] See *January 8, 2010 Notice of Appeal*, attached as **Exhibit G**.  *Scherer Depo*, p. 35:13-17 (Depo Exh. C).
[7] See *April 14, 2010 Entry*, attached as **Exhibit H**.  *Scherer Depo*, p. 15-18 (Depo Exh. F).
[8] See *April 14, 2010 email*, attached as **Exhibit I**.  *Scherer Depo*, p. 41-42 (Depo Exh. G).
[9] See *April 24 and 25, 2010 emails*, attached as **Exhibit J**.  *Scherer Depo*, p. 46-47 (Depo Exh. H).
[10] See *May 20-22, 2010 emails*, attached as **Exhibit K**.  *Scherer Depo*, p. 49-50, 56 (Depo Exh. I).
[11] Deposition excerpt attached as **Exhibit L**.
[12] See *June 2, 2010 email*, attached as **Exhibit M**.  *Scherer Depo*, p. 79:25-80:11 (Depo Exh. K).

FREUND, FREEZE & ARNOLD
A Legal Professional Association

**C.      Retention of Chorpenning Firm.**

In the interim, Plaintiff retained attorney Eliott Good and the law firm of Chorpenning, Good & Pandora Co., LPA (collectively the "Chorpenning Firm") on July 19, 2010, to represent him (and others) in the Trust Litigation.[13]   According to Plaintiff, he was entitled to an accurate, final accounting in the Trust Litigation and hired the Chorpenning Firm to pursue it.   *Scherer Depo*, p. 53:18-21, 63:10-16.   There is no evidence the Chorpenning Firm ever spoke with anyone in the Wiles Firm regarding Plaintiff or the Trust Litigation.   *Id*., p. 79:9-19, *Wiles Depo*, p. 98:17-25.   There is likewise no evidence Plaintiff or the Chorpenning Firm ever requested the file.  *Wiles Depo*, p. 66:16-25, *Scherer Depo*, p. 125:8-22, 127:3-14.

**D.      November 8, 2010 Meeting and Other Communication.**

Despite Jim Wiles' affirmative statement that the Wiles Firm was out and Plaintiff's retention of the Chorpenning Firm, Jim Wiles and Plaintiff continued to communicate from time to time because they developed a friendship over the years.  *Wiles Depo*, p. 78:8-11, 88:2-14. Generally, Plaintiff would bring things up he wanted to do against Bank One but Jim Wiles "never really did hear what it was [Plaintiff] was going to do and why he was going to do it and what the basis was.  *Wiles Depo*, p. 50:21-23.   For instance, Plaintiff talked about filing something in federal court.  *Id*., p. 92.  Plaintiff ultimately retained new counsel and filed suit in federal court against Bank One and its attorneys in July 2011.  *Scherer v. JP Morgan Chase & Co.*, 508 Fed. Appx. 429, 433 (6th Cir. 2012).[14]   There are apparently other claims/actions Plaintiff wanted to take, which to date, have not been filed.  *Scherer Depo*, p. 64-67.  There were also issues with Park National Bank and who could represent the other beneficiaries moving

---

[13] See *July 19, 2010 Engagement Letter and Fee Agreement*, attached at **Exhibit N**.  *Scherer Depo*, p. 61 (Depo Exh. J).  Scherer signed the engagement letter on July 21, 2010.  *Scherer Depo*, p. 73:25-74:8.
[14] Attached as **Exhibit O**.  This Court dismissed Plaintiff's claims on the basis of collateral estoppel and the Sixth Circuit Court of Appeals affirmed.  The Sixth Circuit also issued an order to Plaintiff's attorney to show cause why he should not be sanctioned for filing a frivolous appeal.  He was eventually sanctioned.

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**

forward in the Trust Litigation. *Id.*, p. 48-49. Jim Wiles never spoke with Park National Bank. *Id.*, p. 127: 23-25.

Plaintiff and Jim Wiles did meet on November 8, 2010.[15] Plaintiff wanted to let Jim Wiles know "what was going on with everything." *Wiles Depo*, p. 87. Plaintiff also asked Jim Wiles "what else can be done, what can we do[?]" *Scherer Depo*, p. 86. Jim Wiles never responded as he "got a call and had to leave, understandably so." *Id.* Before Jim Wiles left the meeting on November 8, 2010 however, Plaintiff asked if the Wiles Firm had a **_final bill_** for its services and representation of Plaintiff in the Trust Litigation. *Id.* Jim Wiles estimated that fees and expenses totaled approximately $1.8 Million. *Id.* They did not meet again.

### E. Chorpenning Firm Representation of Plaintiff.

On November 16, 2010, the Chorpenning Firm filed a motion on behalf of Plaintiff (and others) in the Trust Litigation, seeking among other things, to redocket the matter on the court's calendar.[16] The Chorpenning Firm did not contact or consult the Wiles Firm regarding the November 16, 2010 motion and did not include the Wiles Firm as counsel on the certificate of service. *Id.*, *Wiles Depo*, p. 98:17-25. The Chorpenning Firm continued to represent Plaintiff (and others) in the Trust Litigation through a December 1, 2011 judgment of the probate court. *Bank One Trust Co., N.A. v. Ronald E. Scherer, Sr., et al.*, 10th Dist. No. 11AP-1140, 2012-Ohio-5302, ¶ 8 ("*Scherer VI*").[17] After the Supreme Court of Ohio declined jurisdiction on April 14, 2010, the Wiles Firm (1) was not provided copies of court filings as counsel of record by the probate court or counsel, (2) neither prepared nor filed pleadings on anyone's behalf and (3) did

---

[15] See *November 8, 2010 email chain*, attached as **Exhibit P**. *Scherer Depo*, p. 81-86 (Depo Exh. M).
[16] See *November 16, 2010 Motion*, attached as **Exhibit Q**. The Chorpenning Firm subsequently filed pleading on Plaintiff individually. See *March 23, 2011 Motion for Relief from Judgment*, attached as **Exhibit R**. *Scherer Depo*, p. 110 (Depo Exh. Z).
[17] Attached as **Exhibit S**. *Scherer VI* ultimately ruled consistent with the probate court's May 14, 2008 final judgment accepting, approving and settling Bank One's final accounting, overruling objections to the final accounting and determining that Bank One's actions as trustee were appropriate, confirmed and approved.

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**

not appear before the probate court at any hearing or trial on anyone's behalf. *Scherer Depo*, p. 77:13-78:13, *Wiles Depo*, p. 94:19-24.

Plaintiff however continued to communicate with Jim Wiles. For instance, on December 7, 2010, Plaintiff asked Jim Wiles if he was "attending the Status Conference for the new hearing that [Judge] Sheward has scheduled for this coming Tuesday, [12/14/2010]?"[18] Jim Wiles informed Plaintiff he was not provided copies of any filings by any counsel and that he was not attending the hearing because "he wasn't involved in the case. . ." *Id.*, *Wiles Depo*, p. 96. The Chorpenning Firm's representation of Plaintiff continued through a November 12, 2012 decision from the Tenth District Court of Appeals affirming the probate court's December 1, 2011 judgment in its entirety.[19] *Scherer VI*. The Wiles Firm likewise had no involvement with this appeal. *Id.* *Scherer Depo*, p. 110:21-111:10.

### F. Plaintiff's Filing in Supreme Court of Ohio Office of Disciplinary Counsel.

On December 9 or 10, 2010, Plaintiff personally prepared and filed a grievance against Judge Sheward in the Ohio Supreme Court Office of Disciplinary Counsel.[20] On December 12, 2010, Plaintiff sent an unsolicited copy of same to Jim Wiles.[21] Jim provided no input and had no involvement in Plaintiff's filing and in fact, did not read the copy Plaintiff provided him. *Scherer Depo*, p. 98, *Wiles Depo*, p. 102, 104, 106.

On December 18, 2010, Plaintiff sent Jim Wiles an unsolicited copy of a supplemental filing with the Office of Disciplinary Counsel which Plaintiff prepared.[22] *Scherer Depo*, p. 99.

---

[18] See *November 30-December 10, 2010 email chain*, attached as **Exhibit T**. *Scherer Depo*, p. 88 (Depo Exh. O).
[19] Plaintiff (and others), through new counsel, appealed the Tenth District's November 15, 2012 decision to the Ohio Supreme Court on December 31, 2012. See *December 31, 2012 Notice of Appeal*, attached as **Exhibit U**. The Supreme Court declined jurisdiction on March 27, 2013 (see *March 27, 2013 Entry*, attached as **Exhibit V**) and denied a subsequent motion for reconsideration on May 22, 2013. See *May 22, 2013 Reconsideration Entry*, attached as **Exhibit W**.
[20] See *Disciplinary Counsel Grievance Form*, attached as **Exhibit X**. *Scherer Depo*, p. 95 (Depo Exh. P).
[21] See *December 12, 2010 email*, attached as **Exhibit Y**. *Scherer Depo*, p. 95 (Depo Exh. P).
[22] See *December 18, 2010 email and Supplemental Submission*, attached as **Exhibit Z**. *Scherer Depo*, p. 97-98 (Depo Exh. Q).

A portion of Plaintiff's supplemental filing discussed contempt rulings issued by Judge Sheward against Jim Wiles personally.  *Id.*  Jim Wiles and Plaintiff exchanged numerous emails between December 18 and 19, 2010 regarding facts and decisions in the underlying Trust Litigation from a historical perspective.[23]  Again, Plaintiff drafted and filed the supplemental filing on his own and provided Jim Wiles an unsolicited copy of same on December 26, 2010.[24]  *Id.*

      **G.    Tolling Agreement.**

On or around December 7, 2011, Plaintiff, Jim Wiles, Dale Cook and the Wiles Firm entered into a tolling agreement.[25]  The effective date of the tolling agreement was December 6, 2011 and stated "[f]rom December 6, 2011, the period of limitations for any claims of Ronald E. Scherer, Sr., ***that are not yet barred by the statute of limitations*** shall be tolled and suspended." (Emphasis added).  *Id.*  Defendants' position however was that the statute of limitations had already run.  *Id.*, *Close Depo*, p. 52:3-5.[26]  Plaintiff filed this action on November 30, 2012.

**III.    <u>LAW AND ANALYSIS</u>**

      **A.    Summary Judgment Standard.**

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.  *Id.* at 323; see also *Boretti v. Wiscomb*, 930 F.2d

---

[23] See *December 18-19, 2010 emails*, attached as **Exhibit AA**.  *Scherer Depo*, p. 99 (Depo Exh. R), *Wiles Depo*, p. 109, 114 (Depo Exh. 15-16).
[24] See *December 26, 2010 email and Supplemental Submission*, attached as **Exhibit BB**.  *Scherer Depo*, p. 104 (Depo Exh. U).
[25] See *Tolling Agreement*, attached as **Exhibit CC**.  *Scherer Depo*, p. 103-104 (Depo Exh. W).
[26] Deposition excerpt attached as **Exhibit DD**.

1150, 1156 (6th Cir. 1991).  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986), *quoting* FRCP 56(e), *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir. 1995).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Michigan Protection and Advocacy Service, Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994) Rather, FRCP 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp*., 477 U.S. at 324.  In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Interroyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), cert. denied, 494 U.S. 1091 (1990).

**B.    Plaintiff's Claims Should Be Dismissed Because they are Time-Barred by R.C. 2305.11(A).**

Pursuant to R.C. 2305.11(A), an action for legal malpractice shall be commenced within one year after the cause of action accrued.  "[U]nder R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the **attorney-client relationship for that particular transaction or undertaking terminates**, whichever occurs later." *Zimmie v. Calfee*, 43 Ohio St. 3d, 54, 58,

- 10 -

538 N.E.2d 398 (1989), *Brautigam v. Damon*, S.D. Ohio No. 1:11-cv-551, 2013 U.S. Dist. LEXIS 117962 **12-13 (Aug. 20, 2013). (Emphasis added). The Ohio Supreme Court "view[s] the 'particular transaction' rule as 'prudent and fundamentally fair to all parties concerned.'" *Federal Deposit Ins. Corp. v. Alexander*, 78 F. 3d 1103, 1109 (6th Cir. 1996), citing *Omni-Food*, 38 Ohio St. 3d 385, 528 N.E.2d 941 (1988). The parties stipulate the relevant inquiry before this Court is when the attorney-client relationship for the Trust Litigation terminated. *Scherer Depo*, p. 24:6-30:2.

As this Court recently noted, "[t]he 'key date' for ascertaining when the termination date occurred with respect to a 'particular transaction' is when the legal representation on the matter in question ceases, rather than all representation." *Antioch Litigation Trust, v. McDermott Will & Emery, LLP*, S.D. Ohio No. 3:09-cv-218, 2013 U.S. Dist. LEXIS 46779 *10 (April 1, 2013). "Continued general representation" of a client does not toll the statute of limitations because the focus is on representation in a "particular transaction." *Id*., citing *Alexander*, 78 F. 3d at 1110, *Ruf v. Belfance*, 9th Dist. No. C.A. No. 26297, 2013-Ohio-160 ¶ 20 (holding the attorney-client relationship was not tolled even though defendant continued to work for plaintiff because plaintiff unequivocally terminated the attorney-client relationship when she retained new counsel for her divorce).

An attorney-client relationship is terminated by an affirmative act by either the attorney or client that signals the end of the relationship. This inquiry focuses on the affirmative acts of the parties and not their subjective feelings or opinions which are irrelevant. *Ruf*, at ¶ 13 (emphasis in original), *Brown v. Johnstone*, 5 Ohio App. 3d 165, 166, 450 N.E.2d 693 (9th Dist. 1982)(rejecting the proposition that an explicit statement from an attorney is required to terminate the attorney-client relationship). When one party to the attorney-client relationship takes an affirmative, clear and unambiguous act that is so inconsistent with the continued

- 11 -

relationship, the court may decide whether the relationship terminated as a matter of law.  *Ruf*, at ¶ 12.  *Thayer v. Fuller & Henry, Ltd*, 503 F. Supp. 2d 887, 892 (N.D. Ohio 2007), citing *Mobberly v. Hendricks*, 98 Ohio App. 3d 839, 843, 649 N.E.2d 1247 (9th Dist. 1994), *McGlothin v. Schad*, 194 Ohio App.3d 669, 2011-Ohio-3011 ¶ 16 (12th Dist.)(finding appellant's affirmative act of filing his application for reopening his appeal without appellee's assistance unequivocally terminated the attorney client relationship).

       1.    <u>The Attorney-Client Relationship Terminated on May 20, 2010 and Was Not Dependent Upon the Filing of a Motion to Withdraw.</u>

Jim Wiles terminated the attorney-client relationship on May 21, 2010 when he said "we are out."  This is illustrated by *Wozniak v. Tonidandel*, 121 Ohio App. 3d 221, 699 N.E. 2d 555 (8th Dist. 1997).  In *Wozniak*, plaintiff/client retained defendant/attorney to represent him.  *Wozniak*, 121 Ohio App. 3d at 223.  Trial resulted in a verdict against plaintiff.  *Id*., at 224.  Immediately following announcement of the verdict, defendant told plaintiff that "my firm's engagement was over.  We had agreed to represent him in the trial.  The trial was behind us.  I told him that I would do no further work."  *Id*.  In affirming the trial court's grant of summary judgment in favor of defendant, the Eighth District Court of Appeals held "the attorney-client relationship was terminated . . . when, after the jury verdict, defendant told plaintiff that his firm's engagement was over."  *Id*., at 226.

Like defendant in *Wozniak*, Jim Wiles clearly and unambiguously told Plaintiff on May 21, 2010 that the Wiles Firm's representation was over.  *Exhibit K*.  Jim Wiles affirmatively told Plaintiff this on a number of different occasions.  *Wiles Depo*, p. 49:13-17, 78:6-20.   Plaintiff even asked what the amount of the **final bill** was!  *Scherer Depo*, p. 86.  Three salient facts demonstrate that Jim Wiles and the Wiles Firm were "out."  The Wiles Firm never again (1) filed pleadings on behalf of Plaintiff, (2) never appeared in court on behalf of Plaintiff, and (3)

- 12 -

received pleadings, notices, etc. from counsel or the court. *Id.*, p. 94:19-24, *Scherer Depo*, p. 77:13-78:13. Plaintiff undoubtedly understood this as he retained new counsel!

Plaintiff then inquired whether the Wiles Firm "filed a withdrawal from the case." *Exhibit K*. The Wiles Firm did not file a motion to withdraw in accordance with the probate court's local rules; however, such a motion was not required to terminate the attorney-client relationship. *Smith v. Conley*, 109 Ohio St. 3d 141, 2006-Ohio-2035 ¶ 9, 846 N.E.2d 509 (holding that for purposes of R.C. 2305.11, the termination of an attorney-client relationship is not controlled by local rules of court), *Wozniak*, 121 Ohio App. 3d at 227 (commenting that "in a statute of limitations context the conduct of an attorney can terminate an attorney-client relationship prior to the filing of the notice to withdraw"), *Brautigam*, 2013 U.S. Dist. LEXIS 117962 at *16.

Termination of the attorney-client relationship was also not dependent upon the filing of a motion to withdraw because there was nothing left for the Wiles Firm to do on Plaintiff's behalf after the Ohio Supreme Court declined jurisdiction. *Trickett v. Krugliak, Wilkins, Griffiths & Doughterty Co., L.P.A.*, 11th Dist. No. 2000-P-0105, 2001-Ohio-3927 (holding the attorney-client relationship can terminate on its own when the underlying action has concluded and the attorney has exhausted all remedies in the case), *McGlothin*, 2011-Ohio-3011 at ¶¶ 15, 17 (commenting the attorney-client relationship may have terminated without an affirmative act following declination of an appeal to the Supreme Court of Ohio). There were no claims pending against Plaintiff, he had no claims pending against anyone and the Wiles Firm exhausted all remedies on Plaintiff's behalf. *Exhibit A*, *Wiles Depo*, p. 45:1-14, *Scherer Depo*, p. 44:11-

FREUND, FREEZE & ARNOLD
A Legal Professional Association

45:6.[27]  The $6,202,623 judgment against Plaintiff was final as was the probate court's sanction dismissing his counterclaims with prejudice.  *Exhibits A and O*.

Jim Wiles terminated the attorney-client relationship on May 21, 2010.  The Wiles Firm ceased performing legal work for, and appearing on behalf of, Plaintiff in the Trust Litigation. Plaintiff knew this and retained new counsel.  Counsel and the court knew this and ceased including the Wiles Firm on service copies of pleadings, notices, etc.  The facts are not in dispute.  Plaintiff failed to bring this action within one year of May 21, 2010 as required by R.C. 2305.11.  Therefore, Plaintiff's claims are time-barred and Defendants are entitled to judgment as a matter of law.

2.  <u>*Assuming Arguendo* the Attorney-Client Relationship Did Not Terminate on May 21, 2010, it Terminated on July 19, 2010 at the Latest</u>.

Ohio courts consistently hold the retention of new counsel is an affirmative, clear and unambiguous act sufficient to terminate the attorney-client relationship.  *Zimmie*, 43 Ohio St. 3d at 58 (finding appellant's legal malpractice claim accrued when appellee retained new counsel), *Ruf* at ¶ 14 (holding appellant's "conduct unequivocally signaled the end of the attorney-client relationship . . .when she retained new counsel for her divorce"), *Burzynksi v. Bradley & Farris Co., L.P.A.*, 10th Dist. No. 01AP-782, 2001-Ohio-8846, 2001 Ohio App. LEXIS 5970 **11-12 (determining the "attorney-client relationship unquestionably ended . . . when plaintiff retained new counsel who filed a lawsuit in federal court concerning the same matters for which defendants had represented plaintiff"), *Wilkerson v. O'Shea*, 12th Dist. No. CA2009-03-068, 2009-Ohio-6550 ¶¶ 2, 18 (finding appellant's legal malpractice action was time-barred because it was not filed within one year of her retention of new counsel), *DiSabato v. Thomas M. Tyack &*

---

[27] Plaintiff asserts his right to an accurate, final accounting remained in issue in the Trust Litigation.  *Scherer Depo*, p. 45:7-14.  It is undisputed however that Plaintiff took an affirmative act and retained the Chorpenning Firm to represent him on that issue.  *Id*., p. 53:18-21, 63:10-16.

*Associates Co., L.P.A.*, 10th Dist. No. 98AP-1282, 1999 Ohio App. LEXIS 4212 **8-9 (Sept. 14, 1999).[28]  If this Court finds the attorney-client relationship did not terminate on May 21, 2010 (which is denied), Defendants are still entitled to judgment as a matter of law because reasonable minds can only conclude Plaintiff terminated the relationship on July 19, 2010.

No matter how Plaintiff attempts to spin it, he retained the Chorpenning Firm to represent the interests he believed he continued to possess in the Trust Litigation.  *Exhibits N, Q and R*, *Scherer Depo*, p. 53:18-21, 63:10-16, 110.  This retention terminated the attorney-client relationship as held by *DiSabato, supra*.  In *DiSabato*, plaintiff/client retained defendant/attorney to defend him in a lawsuit filed by HNB.  *DiSabato*, at *1.  An answer was filed but no counterclaims were asserted.  *Id*.  Summary judgment was in entered in favor of HNB in March 1990 and not appealed.  *Id*.  Defendant continued to provide legal services to plaintiff through February 1993.  *Id*., at *6.  In January 1994, plaintiff retained new counsel to assert claims against HNB he allegedly possessed in the original suit.  *Id*. at **1-2.  Those claims were voluntarily dismissed in December 1994 and a legal malpractice action was filed August 1996. *Id*., at *2.

In affirming the trial court's grant of summary judgment in favor of defendant, the Tenth District Court of Appeals held "the attorney-client relationship was terminated [in January 1994, when [new counsel] filed a complaint on behalf of plaintiff against HNB, as retaining another attorney to file a suit regarding the same subject matter is an affirmative act demonstrating to a reasonable person that the attorney-client relationship [for that particular transaction] had ended."  *Id*., **7, 9.  Like the plaintiff in *DiSabato*, Plaintiff retained the Chorpenning Firm to represent his interests in obtaining an accurate, final accounting from Bank One in the Trust

---

[28] *Compare Chapman v. Basinger*, 71 Ohio App.3d 5, 9, 592 N.E.2d 908 (1991)(holding that "simply talking to another lawyer will not break a previous attorney-client relationship"), *Feudo v. Pavlik*, 55 Ohio App. 3d 217, 219, 563 N.E.2d 351 (1988)(commenting that "[m]ere discussions with a second lawyer about a case . . . unbeknownst to the first lawyer, do not signal the termination of the attorney-client relationship with the first lawyer").

Litigation.  *Exhibit N*, *Scherer Depo*, p. 53:18-21, 63:10-16.  This issue existed since the Trust Litigation was filed in September 2004.  *Exhibit A*, ¶ 15.

The Chorpenning Firm filed pleadings on behalf of Plaintiff but neither included the Wiles Firm on the certificate of service nor served it with pleadings.  *Exhibits Q and R*, *Scherer Depo*, p. 77:13-78:13, *Wiles Deposition*, p. 94:19-24, 94:19-24.  If Jim Wiles still represented Plaintiff, why wouldn't he be served with pleadings?  Likewise, the Chorpenning Firm never communicated with Jim Wiles regarding Plaintiff or the Trust Litigation.  *Id*.  Again, if Jim Wiles still represented Plaintiff, why wouldn't the Chorpenning Firm contact him?  Having no further involvement in the Trust Litigation and receiving no pleadings, notices, etc. from counsel or the court, Jim Wiles only received information about the Trust Litigation (e.g., status conferences) from Plaintiff.  *Exhibit T*.  If Jim Wiles still represented Plaintiff, why wouldn't he get notices of status conferences from the court?

If the Court does not find Jim Wiles terminated the attorney-client relationship on May 21, 2010, it is undisputed Plaintiff terminated it on July 19, 2010 when he retained new counsel.  In that instance, Defendants are entitled to judgment as a matter of law because Plaintiff's claims are time-barred.

           3.      <u>Communication in November and December 2010 Did Not Toll the Attorney-Client Relationship</u>.

In an attempt to escape the reality that the attorney-client relationship with the Wiles Firm terminated on May 21, 2010 (or July 19, 2010 at the latest), Plaintiff asserts "[w]ithin one year of the filing of this Complaint, the Defendants have represented the Plaintiff, provided him legal advice, and entered into a Tolling Agreement with him, each of which makes timely the filing of this lawsuit."  Doc #20, PAGEID #84, ¶ 14.  The communication between the Parties in

- 16 -

November and December 2010 did not toll the attorney-client relationship with respect to the Trust Litigation.

With respect to Plaintiff's assertion the Wiles Firm "represented him" within one year of filing of this matter, the Wiles Firm adopts, incorporates and alleges as if fully re-written herein, its argument, citation and support set forth above. After the Ohio Supreme Court declined jurisdiction on April 14, 2010, the Wiles Firm never again filed pleadings on behalf of Plaintiff nor appeared on his behalf in the Trust Litigation.[29]

With respect to the Tolling Agreement, it only tolled claims Plaintiff possessed against the Wiles Firm that were not already time-barred effective December 6, 2011. *Exhibit CC*. In other words, for statute of limitations purposes under R.C. 2305.11(A), Plaintiff's claims that accrued before December 6, 2010 are time-barred and not tolled by the Tolling Agreement. *Id*. As argued above, since the attorney-client relationship between the Parties terminated well before December 6, 2010, the Tolling Agreement did not toll the instant claims and Defendants are entitled to judgment as a matter of law. The communication between Jim Wiles and Plaintiff before December 6, 2010, namely in November 2010, in no way tolled the statute of limitations.

Jim Wiles and Plaintiff developed a friendship over the years and continued to communicate from time to time. *Wiles Depo*, p. 78:8-11, 88:2-14. Generally, Plaintiff would bring things up he wanted to do against Bank One and Jim Wiles would just listen. *Id*., p. 50:21-23. Plaintiff talked about filing something against Bank One in federal court and retained new counsel to do so. *Id*., p. 92, *Exhibit O*. Plaintiff apparently has other unknown claims/actions he wants to assert against Bank One, but to date, has not done so. *Scherer Depo*, p. 64-67. There were also issues with Park National Bank and who could represent the other beneficiaries

---

[29] In fact, the last pleading the Wiles Firm filed on behalf of Plaintiff was the January 8, 2010 Notice of Appeal and Memorandum in Support of Jurisdiction filed in the Supreme Court of Ohio. *Exhibit H*.

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**

moving forward in the Trust Litigation.  *Id*., p. 48-49.  Jim Wiles never spoke with Park National Bank.  *Id*., p. 127: 23-25.  All issues pertaining to an accurate, final accounting were handled by the Chorpenning Firm.  *Exhibits N and S*.  Plaintiff cannot extend the statute of limitations simply by continuing communication with Jim Wiles.  *Omni-Food*, at 387-388 (commenting a client with knowledge of an attorney's malpractice cannot unduly perpetuate the attorney's potential liability and exposure to suit simply by continuing to communicate with the attorney).

In the event the Court disagrees, the relevant inquiry then would be to examine the communication and action of the Parties beginning December 6, 2010 to determine whether the attorney-client relationship with respect to the Trust Litigation terminated.  On December 7, 2010, Plaintiff asked Jim Wiles if he was attending a status conference with the court on December 12, 2010.  *Exhibit T*.  Because Jim Wiles "wasn't involved in the [Trust Litigation]" anymore, as confirmed by the fact he was not receiving copies of any court filings, he again told Plaintiff he was not attending.  *Id*., *Wiles Depo*, p. 94, 96.  In no way does this communication serve as legal advice or evidence of a continuing attorney-client relationship.

Plaintiff argues his claims are timely because Jim Wiles gave him "legal advice" in emails on December 18 and 19, 2010 regarding Plaintiff's Office of Disciplinary Counsel grievance against Judge Sheward, which **Plaintiff prepared and filed on his own**.  *Exhibits X, Z and AA*.  First, Plaintiff's filings in the Office of Disciplinary Counsel are separate, distinct and unrelated from the Trust Litigation, the "particular transaction" in which the Wiles Firm formally represented Plaintiff.  Therefore, communication regarding Plaintiff's filings in the Office of Disciplinary Counsel did not toll the attorney-client relationship in the Trust Litigation.  Second, there is no dispute Plaintiff prepared and filed the initial grievance against Judge Sheward on his own without any input from Jim Wiles and sent an unsolicited copy of same to Jim Wiles on December 12, 2010.  *Scherer Depo*, p. 95-96, 98, *Wiles Depo*, p. 102, 104, 106, *Exhibit X*.

- 18 -

Third, there is no dispute Plaintiff prepared a supplemental filing on his own without any input from Jim Wiles and sent Jim Wiles an unsolicited copy of same on December 18, 2010.  *Id.*, p. 99, *Exhibit Z.*

Fourth, the communication that followed between the Parties on December 18 and 19, 2010 can only be construed as an exchange of information from a historical perspective. Portions of Plaintiff's filings dealt with contempt orders, including those against Jim Wiles personally in the Trust Litigation.  *Exhibits X and Z.*  As such, and as someone who would answer questions asked by someone a friend, Jim Wiles provided certain historical information to Plaintiff about the Trust Litigation.  *Wiles Depo*, p. 117:21-119:3, 121:9-13, 123:9-17.  Jim Wiles did not prepare any part of Plaintiff's filings in the Office of Disciplinary Counsel and did not file them on Plaintiff's behalf.  *Scherer Depo*, p. 99:13-16.  There is no evidence Jim Wiles agreed to represent Plaintiff before the Office of Disciplinary Counsel.  To the contrary, Jim Wiles simply responded to unsolicited, questions for historical, factual information from a presumed friend.  Even if the Court were to find an attorney-client relationship existed in December 2010 (which is denied), it only related to Plaintiff's filings in the Office of Disciplinary Counsel.  In that instance, Plaintiff's asserted damages could only relate to same, and would not include the $6,202,623 judgment and other sanctions against Plaintiff for discovery abuses in the underlying Trust Litigation.

Neither the Tolling Agreement nor communication between the Parties in November and December 2010 tolled the statute of limitations for Plaintiff's legal malpractice claims under R.C. 2305.11(A).  The attorney-client relationship for the Trust Litigation terminated on May 21, 2010 (but no later than July 19, 2010) when Jim Wiles told Plaintiff the Wiles Firm was out. Plaintiff's filings in the Office of Disciplinary Counsel were separate, distinct and unrelated from

- 19 -

the Trust Litigation, and despite Plaintiff's assertions, Jim Wiles did not represent Plaintiff before the Office of Disciplinary Counsel.

## IV.     CONCLUSION

Accordingly, and for the foregoing reasons, James M. Wiles, Esq. and the Wiles Firm respectfully request the Court grant summary judgment in their favor, and dismiss Plaintiff's claims in their entirety as they are time-barred under R.C. 2305.11(A).

Respectfully submitted,

*/s/ Neil F. Freund*
Neil F. Freund  (0012183)
Adam C. Armstrong  (0079178)
FREUND, FREEZE & ARNOLD
Fifth Third Center
1 South Main Street, Suite 1800
Dayton, OH  45402-2017
Phone: (937) 222-2424
Fax: (937) 222-5369
callison@ffalaw.com
aarmstrong@ffalaw.com
*Counsel for Defendants*
*James M. Wiles, Esq. and*
*Wiles, Boyle, Burkholder &*
*Bringardner Co., L.P.A.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served this  19th day of September, 2013, via the Court's electronic notification system and/or via regular U.S. Mail, upon the following:

**Joel Levin**
**Aparesh Paul**
Levin & Associates Co., LPA
1301 East 9th Street, Suite 1100
Cleveland, OH  44114
*Counsel for Plaintiff*

*/s/ Neil F. Freund*
Neil F. Freund

- 20 -