IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD E. SCHERER, SR., | : | |
| Plaintiff, | : | Case No. 2:12-CV-1101 |
| v. | : | JUDGE ALGENON L. MARBLEY |
| JAMES M. WILES, ESQ., *et al.*, | : | Magistrate Judge Deavers |
| Defendant. | : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter is before the Court on Defendants' Motion for Summary Judgment on Statute of Limitations Defense. (Doc. 21). For the reasons stated below, Defendant's Motion is **DENIED**.

**II. BACKGROUND**

*A. Factual Background*

Plaintiff Ronald Scherer, Sr., became engaged in a trust dispute in 1994. Throughout the pendency of the litigation, Scherer employed different attorneys to represent his interests in the dispute. On December 22, 2005, Jim Wiles, Dale Cook, and the Wiles Firm (collectively "the Wiles Firm" or "Defendants") entered their appearance on Scherer's behalf in the matter then before the Franklin County Probate Court. Following an August 2007 trial, the probate court entered a final judgment on May 14, 2008, ruling against Scherer and disallowing his previously entered counterclaim. On November 24, 2009, the probate court's ruling was affirmed by the

1

Tenth District Court of Appeals.  The Wiles Firm sought certiorari with the Ohio Supreme Court on January 8, 2010.  On April 14, 2010, the Ohio Supreme Court declined jurisdiction.

On May 20, 2010, Scherer emailed Jim Wiles ("Wiles") regarding some questions about the trust.  In his May 21, 2010 response, Wiles included, "Also we are out…We should probably talk." (Doc. 21-11, at 3).  On May 22, 2010, Scherer replied, asking, "Have you filed a withdrawal from the case?" (*Id*. at 2).  Later that day, Wiles wrote back, "No we did not withdraw.  We represented only you.  If you are out, so are we…" (*Id*.).  Other than emailing a joke to Wiles on June 2, 2010, Scherer did not communicate with Wiles from May 22, 2010 through November 1, 2010.

In July 2010, the trust beneficiaries, Scherer included, hired the law firm of Chorpenning, Good & Pandora LLP ("Chorpenning Firm") to represent the beneficiaries' interests in the trust litigation.   The Chorpenning Firm never contacted the Wiles Firm concerning the trust litigation.  On November 16, 2010, the Chorpenning Firm filed a motion on behalf of Plaintiff and other beneficiaries, seeking to redocket the matter on the court's calendar.  The Chorpenning Firm's representation of Scherer for the trust litigation continued through November 12, 2012, when the Tenth District Court of Appeals upheld the Probate Court's December 1, 2011 judgment.

Wiles and Scherer communicated intermittently after the Chorpenning Firm was hired.  On November 8, 2010, Wiles and Scherer had their final in-person meeting.  Scherer had expressed his desire "to pick the right directions for all concerned." (Doc. 27-8, at 2).  During that meeting, Scherer asked Wiles if the Wiles Firm had compiled a final bill for its services and representation, which Wiles provided.

On or around December 9, 2010, Plaintiff prepared and filed a grievance against Judge Sheward in the Ohio Supreme Court Office of Disciplinary Counsel.  On December 12, 2010,

2

Scherer emailed Wiles a copy of the grievance. Wiles and Scherer communicated via email regarding Wiles' suggested changes following a review of the grievance, which included certain facts related to the Wiles Firm's representation of Scherer and other, more general suggestions. Scherer filed the grievance on December 26, 2010.

On December 7, 2011, Scherer and the Defendants entered into a tolling agreement. (*See* Doc. 21-29). The tolling agreement provided, in relevant part, that "[f]rom 12/6/2011, the period of limitations for any claims of [Scherer] that are not yet barred by the statute of limitations shall be tolled and suspended." (*Id*. at 3). Defendants signed the agreement, but took the position that the statute of limitations had already run, which they evidenced through a handwritten addition on paragraph four of the agreement. (*Id*. at 4).

### B. Procedural Background

On November 30, 2012, Plaintiff filed his Complaint asserting legal malpractice. (Doc. 1). On September 9, 2013, Plaintiff filed a Corrected Complaint asserting legal malpractice. (Doc. 20). Defendants filed their Motion for Summary Judgment on September 19, 2013. (Doc. 21). On August 7, 2014, this Court held oral argument on the Defendant's Motion for Summary Judgment, and counsel for both parties participated. This matter is, therefore, ripe for review.

### III. STANDARD OF REVIEW

Summary judgment is proper if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if proof of that fact would establish one of the elements of a claim and would affect the application of governing law to the rights of the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citing *Johnson v. Soulis, Wyo.*, 542 P.2d 867, 872 (1975)).

3

A movant for summary judgment meets its initial burden "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Dixon v. Anderson*, 928 F.2d 212, 216 n. 5 (6th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986)). At that point, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Id*. (quoting Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). It is not, however, the role of the trial court to "resolve factual disputes by weighing conflicting evidence because it is the jury's role to assess the probative value of the evidence." *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 230 (6th Cir. 1990) (citing *Stone v. William Beaumont Hosp.,* 782 F.2d 609, 615 n. 5 (6th Cir. 1986); *Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir. 1980)). All evidence and reasonable inferences must be viewed in the light most favorable to the party opposing the motion. *Pucci v. Nineteenth Dist. Court*, 628 F.3d 752, 759 (6th Cir. 2010) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### IV. LAW & ANALYSIS

*A. Statute of Limitations*

Under Ohio law, an action for legal malpractice must be filed within one year after the cause of action accrues. *See* O.R.C. § 2305.11(A).  Here, Plaintiffs' legal malpractice action was filed on November 30, 2012.  Thus, in order for Plaintiffs' claims to be viable, they must have accrued no earlier than November 30, 2011.

The Ohio Supreme Court has established the following standard for determining when a cause of action for legal malpractice accrues:

> [U]nder R.C. 2305.11(A), an action for legal malpractice accrues
> and the statute of limitations begins to run when there is a

4

> cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later.

*Zimmie v. Calfee, Halter & Griswold*, 538 N.E.2d 398, 401 (Ohio 1989) (citing *Omni-Food & Fashion, Inc. v. Smith*, 528 N.E.2d 941 (Ohio 1988)).

In Ohio, "for the purposes of the accrual of a legal malpractice claim, an attorney-client relationship ends 'when the attorney-client relationship for that *particular transaction* or *undertaking terminates.*'" *FDIC v. Alexander*, 78 F.3d 1103, 1110 (6th Cir. 1996) (emphasis original) (quoting *Zimmie*, 538 N.E.2d at 401). In adopting this rule, "[t]he Supreme Court of Ohio … expressly rejected an argument that 'continued 'general' representation should toll the statute of limitations.'" *Id*. (quoting *Omni-Food & Fashion, Inc. v. Smith*, 528 N.E.2d 941, 944 (Ohio 1988)). Thus, under this "particular transaction" rule, the statute of limitations may begin to run as to a particular transaction, even though the attorney may continue to represent the client on other matters. *Id*.; *see also Gatchell v. Lawyer Title Insurance Corporation*, No. 98-AP-1487, 1999 WL 688184 (Ohio Ct. App. Sept. 7, 1999) (holding that, for purposes of the statute of limitations, an attorney's representation of a client regarding preparation of a written mortgage release terminated when the release was signed).

### 1. May 21, 2010 Email Communication

Defendants first argue that the attorney-client relationship was terminated on May 21, 2010, when Wiles included the phrase, "we are out," in his email to Scherer. Defendants claim that there are three particular facts that demonstrate that the Wiles Firm was no longer in an attorney-client relationship with Plaintiff: 1) after May 21, 2010, the firm did not file any pleadings on Plaintiff's behalf; 2) the firm never again appeared in court on behalf of Plaintiff;

5

and 3) the firm did not receive any pleadings, notices, or related materials from the Chorpenning Firm or the court after May 21, 2010.  Defendants acknowledge that they did not file a motion to withdraw in accordance with the probate court's local rules, but assert that such a motion was not necessary to terminate the attorney-client relationship.  *See Smith v. Conley*, 846 N.E.2d 509, 513 (Ohio 2006) ("[f]or purposes of R.C. 2305.11, the termination of an attorney-client relationship is not controlled by local rules of court.").  Moreover, Defendants insist that there was nothing left for the Wiles Firm to do once the Ohio Supreme Court declined jurisdiction; there were no claims pending against Plaintiff, Plaintiff had no claims pending against other parties, and the firm had exhausted all remedies on Plaintiff's behalf.  Defendants note that the $6,202,623 judgment against Plaintiff was final, along with the probate court's sanction dismissing Plaintiff's counterclaims with prejudice.

Defendants rely on *Wozniak v. Tonidandel*, 699 N.E.2d 555 (Ohio App. 1997), in which the court found that an attorney-client relationship may be terminated after the return of a jury verdict, by either the attorney or the client communicating that to the other, even without the filing of formal withdrawal.  Defendants contend that *Wozniak* supports their argument that Wiles' statement was sufficient to terminate the attorney-client relationship with Scherer.  Plaintiff, however, claims that the case *sub judice* should be distinguished from *Wozniak*, based on Defendants' failure to send Plaintiff a letter stating that the their representation was over, or simply telling Plaintiff that their attorney-client relationship had come to an end.

Plaintiff contends that Wiles' "we are out" statement is simply an ambiguous phrase that does not reflect the termination of the attorney-client relationship.  According to Plaintiff, the fundamental issue of the trust litigation was unresolved at the time Wiles sent the alleged

termination email. Thus, Scherer was still part of the case, and, according to Plaintiff, so were Defendants.

While the actual words included in the email communications between Scherer and Wiles are undisputed, the intention behind the words is unclear. Though Wiles stated, "we are out," his email two days later said that they had not withdrawn, but were out if Plaintiff was out. Under Ohio law, "the question of when an attorney-client relationship for a particular undertaking or transaction has terminated is necessarily one of fact." *Omni-Food*, 528 N.E. 2d at 388. Here, a reasonable juror could find that Defendant's had not unequivocally terminated the attorney-client relationship. Thus, the Court cannot find that the statute of limitations began to run on May 21, 2010, thereby barring Plaintiff's legal malpractice claim.

## 2. Plaintiff's July 2010 Retention of New Counsel

Defendant next argues that, even if the attorney-client relationship was not terminated by the May 21, 2010 email, it was dissolved by Plaintiff's retention of the Chorpenning Firm. Defendants rely on *DiSabato v. Tyack & Associates, Co., L.P.A.*, 1999 WL 715901 (Ohio App. Sept. 14, 1999) to support their claim. The *DiSabato* court held that the attorney-client relationship had been terminated when the newly-appointed counsel filed a complaint on the plaintiff's behalf that concerned the same subject matter on which defendant-attorney had been representing the plaintiff. *Id*. at *3. Defendants assert that, like in *DiSabato*, Plaintiff hired the Chorpenning Firm to obtain an accurate final accounting from Bank One in the trust litigation, an issue that had been pending in that case since its September 2004 filing. Additionally, the Chorpenning Firm never included the Wiles Firm on the certificate of service on any of the pleadings it filed, nor served it with those pleadings. The Chorpenning Firm likewise did not

communicate with Wiles regarding Plaintiff or the trust litigation. According to Defendants, the only information Wiles received concerning the trust litigation was that which Plaintiff himself shared with Wiles. Because Plaintiff's retention of new counsel is undisputed, Defendants insist that the statute of limitations began to run on July 19, 2010, therefore barring Plaintiff's legal malpractice claim.

Plaintiff counters that the hiring of the Chorpenning Firm, though undisputed, does not represent an affirmative act terminating Defendants' representation of Plaintiff. Plaintiff emphasizes that he continued to maintain confidence in Wiles on the matter, and the retention of the Chorpenning Firm merely highlights that confidence. Plaintiff points to *Brown v. Johnstone*, in which the court found that "conduct which dissolves the essential mutual confidence between attorney and client signals the termination of the professional relationship." 450 N.E.2d 693, 695 (Ohio Ct. App. 1982). Because Wiles had clashed with the assigned trial judge, Plaintiff claims that it was necessary to take on additional counsel in order to be adequately represented. Moreover, Plaintiff repeatedly notes that retention of the Chorpenning Firm functioned as the hiring of additional, not substitute, counsel. According to Plaintiff, there is a material dispute as to whether the hiring of additional counsel constitutes the termination of the attorney-client relationship, thereby precluding summary judgment.

Plaintiff's heavy reliance on *Brown* is misguided. *Brown* was clarified in *Mastran v. Marks*, in which the court explained that, "the termination of the attorney-client relationship depends, not on a subjective loss of confidence on the part of the client, but on conduct, an affirmative act by either the attorney or the client that signals the end of the relationship." 1990 WL 34845, at *4 (Ohio Ct. App. Mar. 28, 1990). Though he does not misstate the *Brown* court's

8

holding, Plaintiff mistakenly focuses his efforts on his unwavering confidence in Wiles as proof that the statute of limitations did not begin to run upon the hiring of the Chorpenning Firm.

On its face, Defendants' argument that the retention of the Chorpenning Firm constitutes an affirmative act that terminated the attorney-client relationship weighs in favor of granting summary judgment. Plaintiff, however, has presented a plausible explanation that the Chorpenning Firm was retained as additional counsel, rather than replacement counsel. A reasonable juror could find that the appointment of new counsel was not the end of the Wiles Firm's representation of Plaintiff, but merely Scherer's choice to hire other attorneys to assist in his representation. Thus, summary judgment cannot be granted on this basis.

### 3. November and December 2010 Communications

By its terms, the tolling agreement tolls the limitations period for any claim that is still timely as of the effective date, December 6, 2011. Thus, if the parties' relationship did not terminate before December 6, 2010, Plaintiff's claim is timely. Defendants argue that even if the relationship remained ongoing throughout the May 2010 emails and retention of the Chorpenning firm, it nevertheless ended before December 6, 2010. Defendants proffer that their communications with Plaintiff during November and December 2010 did not preserve the attorney-client relationship regarding the trust litigation. Defendants acknowledge that they communicated with Plaintiff, but claim that such communications, insofar as they concerned the trust litigation, were one-sided, with Plaintiff talking and Defendants merely listening. According to Defendants, such communications cannot be used to continue the relationship.

Wiles vehemently denies that he provided legal advice through his December 18 and 19 email communications with Plaintiff, based on four assertions: 1) all of Plaintiff's filings with

9

the Office of Disciplinary Counsel are separate and unrelated to the trust litigation, which was the specific transaction in which Defendants represented Plaintiff; 2) it is undisputed that Plaintiff prepared and filed the grievance against Judge Sheward without any input from Wiles, to whom Plaintiff sent a copy of the grievance without Wiles requesting that he do so; 3) it is undisputed that Plaintiff prepared a supplemental filing, independently of Wiles, and then sent Wiles a copy of that filing on December 18, 2010; and 4) the December 18 and 19, 2010 communications between the parties were simply an exchange of factual information from a historical perspective. Defendants insist that neither the Tolling Agreement nor the November and December 2010 communications between the parties tolled the statute of limitations for Plaintiff's legal malpractice claim.

     Plaintiff counters that his communications with Wiles in December 2010 demonstrate that Wiles was still actively representing him, thereby extending the statute of limitations. Plaintiff argues that Wiles' failure to include in his emails that he no longer represented Scherer shows that there was still an attorney-client relationship. Additionally, Plaintiff claims that Wiles' December 10, 2010 email, which included thoughts on the Chorpenning Firm's familiarity with the proceedings, Judge Sheward, and Bank One's counsel, constitutes legal advice. Plaintiff maintains that the grievance filed against Judge Sheward was a component of his attorney-client relationship with the Wiles Firm, and that Wiles' alleged advice on the matter further demonstrates the continuation of that relationship. Plaintiff asserts that he prepared and filed the grievance as part of the overall strategy, and because the Wiles Firm was concerned about continued recourse from Judge Sheward in separate, future proceedings. Thus, Plaintiff insists that the statute of limitations did not begin to run until December 19, 2010, the date on which Wiles last communicated with Plaintiff about the grievance.

Though Plaintiff has not conclusively shown that Defendants' communications with Plaintiff constitute a continued attorney-client relationship, there are disputed issues of material fact that preclude this Court from granting summary judgment.  Defendants contend that the exhibits and statements on which Plaintiff relies offer general statements regarding facts about prior proceedings, rather than strategy and plans for moving forward with the trust litigation.  A reasonable juror, however, could find that the communications exchanged by Scherer and Wiles demonstrate the continuation of an attorney-client relationship.  In that case, the limitations period would have begun to run December 19, 2010, and, in light of the tolling agreement, this claim would still be timely.  Accordingly, summary judgment is inappropriate.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion is **DENIED.**  In addition, Defendants' Motion for Leave to File Additional Evidence (Doc. 33) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

                  **s/Algenon L. Marbley**
                  **ALGENON L. MARBLEY**
                  **UNITED STATES DISTRICT JUDGE**

**Dated: September 2, 2014**